LEON A. CANNIZZARO, JR., Judge.
hThe defendant, Anthony K. Roberts, pled guilty to possession of cocaine. Mr. Roberts, however, reserved his right under *168 State v. Crosby, 338 So.2d 584 (La.1976),[1] to appeal the trial court’s denial of his motion to suppress the evidence against him. He is now appealing that decision.
STATEMENT OF THE CASE
Mr. Roberts was charged by a bill of information with possession of cocaine in violation of La. R.S. 40:967(C). He pled not guilty at his arraignment. The trial court subsequently denied his motion to suppress the evidence against him. After being advised of his constitutional rights and after knowingly waiving those rights, Mr. Roberts pled guilty as charged, but he reserved his right to appeal the trial court’s denial of his motion to suppress. After he waived all legal delays, Mr. Roberts was sentenced to three years at hard labor. Mr. Roberts filed a motion for an appeal, which was granted.
| .FACTS
Captain Ty Joseph Wiltz and his partner, Deputy Grant Solis, who were both employed by the Plaquemines Parish Sheriffs Office, testified at the hearing on the motion to suppress the evidence. Captain Wiltz stated that two narcotics agents from the sheriffs office were conducting an undercover investigation in the Sunrise area of Plaquemines Parish, Louisiana. When the agents observed Mr. Roberts exit a blue Buick automobile that belonged to a known drug buyer and enter a known drug seller’s trailer, the agents called Captain Wiltz, Deputy Solis, and Agent Dean Harvey, who was also working for the Plaquemines Parish Sheriffs Office, for assistance. The agents called the three officers for assistance, because the agents had to leave the area to follow a suspect that they were already observing. Agent Harvey was driving the vehicle in which Captain Wiltz and Deputy Solis were passengers.
After Captain Wiltz, Deputy Solis, and Agent Harvey drove into the area where Mr. Roberts had been seen, which was “a well known drug area,” they saw Mr. Roberts enter an unknown vehicle, a red Chevrolet Blazer. The Blazer was being driven toward Buras, Louisiana, and Captain Wiltz, Deputy Solis, and Agent Harvey followed the Blazer.
The vehicle that Agent Harvey was driving was an undercover, unmarked police vehicle, and none of the officers in the car were in uniform. They did, however, have their guns and badges with them.
When the Blazer arrived in Buras, it pulled into a turn lane and suddenly stopped. Agent Harvey, who was driving the unmarked police vehicle, “had to hit the brakes hard because they [the Blazer] stopped so abruptly.”
|aMr. Roberts exited the Blazer, and Captain Wiltz exited the undercover vehicle. Mr. Roberts began running toward Captain Wiltz, who recognized Mr. Roberts and called him by name. Mr. Roberts continued walking “very fast” toward Captain Wiltz and did not stop when Captain Roberts called his name. When Mr. Roberts got close enough to Captain Wiltz for him to do so, Captain Wiltz grabbed Mr. Roberts and “put him on the hood” of the unmarked car. The red Blazer, whose driver had remained inside the vehicle, then sped away.
When Captain Wiltz asked Mr. Roberts what he was doing, he replied that he thought that the unmarked car was follow *169 ing him “to fight.” Captain Wiltz testified that Mr. Roberts did not try to hit or grab him and that Mr. Roberts did not make any aggressive moves toward him. Additionally, Mr. Roberts did not resist being placed on the hood of the unmarked car, and he complied with all of Captain Wife’s requests. When Captain Wife confronted Mr. Roberts with the fact that he had been seen exiting a known drug buyer’s car, Mr. Roberts explained that he worked on an oyster boat and had gotten a ride from work in that car. Captain Wife testified that he did not believe Mr. Roberts’ explanation, because Mr. Roberts was “entirely to [sic] clean to have been on an oyster boat.”
Captain Wife testified that he was concerned for his safety, because Mr. Roberts had been in a high crime area and had approached him “really fast” after Mr. Roberts had exited the Blazer. Because of his safety concerns, Captain Wife patted down Mr. Roberts. During the pat down, two small rocks of cocaine were found in one of the pockets of Mr. Roberts’ pants. Mr. Roberts was then placed under arrest.
IJERRORS PATENT
A review of the record revealed no errors patent.
ASSIGNMENT OF ERROR
Mr. Roberts has raised a single assignment of error. He asserts that the trial court erred in denying his motion to suppress the evidence against him, because it was seized pursuant to an unlawful war-rantless search.
In the instant case, we must consider whether Captain Wife had reasonable suspicion to conduct an investigatory stop. If we conclude that there was reasonable suspicion, then we must determine whether the cocaine that was in the pocket of Mr. Roberts’ pants was lawfully seized.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court first recognized that “a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.” 392 U.S. at 22, 88 S.Ct. at 1880. According to the Terry case, such an investigatory stop is not an unlawful “seizure” and, therefore, does not violate the prohibition against unreasonable searches and seizures established by the Fourth Amendment to the United States Constitution.
In Louisiana there is statutory authorization for investigatory stops on less than the probable cause required for an arrest. La. C.Cr.P. art. 215.1(A) provides that “[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.”
5In State v. Dank, 99-0390 (La.App. 4 Cir. 5/24/00), 764 So.2d 148, this Court explained the factors a reviewing court must consider in determining whether an investigatory stop was permissible. This Court stated:
“Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. In assessing the reasonableness of an investigatory stop .... [t]he totality of the circumstances *170 must be considered in determining whether reasonable suspicion exists. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. In reviewing the totality of the circumstances, the officer’s past experience, training and common sense may be considered....
99-0390, pp. 4-5; 764 So.2d at 155 (citations omitted).
At the hearing on the motion to suppress the evidence, Captain Wiltz and Deputy Solis testified that Mr. Roberts had been seen in a high crime area, had been seen entering a trailer belonging to a known drug seller, and had been seen exiting a car belonging to a known drug buyer. Captain Wiltz also testified that Mr. Roberts had lied to him about his reason for being in the car belonging to the known drug buyer, because Mr. Roberts was not dirty enough to have been working on an oyster boat as Mr. Roberts said he had been. Additionally, Captain Wiltz and Deputy Stolis testified that Mr. Roberts quickly approached Captain Wiltz after Mr. Roberts exited the car that had stopped in front of the unmarked police car, but they also said that he was cooperative when Captain Wiltz identified himself as a law enforcement officer.
RHad Captain Wiltz and Deputy Stolis articulated in their testimony the facts that supported them conclusions (1) that it was a known drug buyer whose car Mr. Roberts exited, (2) that it was a known drug seller whose trailer Mr. Roberts entered, and (3) that the area in which Mr. Roberts was seen was a high crime area, the record might have supported the assertion that Captain Wiltz had reasonable suspicion to conduct an investigatory stop. What we have, however, is a record that is devoid of the articulable facts from which Officer Wiltz could have drawn reasonable inferences that Mr. Roberts was involved in an illegal drug transaction. To justify an investigatory stop, the Dank case requires the articulation of the facts upon which the conclusions reached by Captain Wiltz and Deputy Stolis were based. The stop may have, in fact, been justified, but the State has the burden of proving that it was, and the State has not carried its burden of proof. La.C.Cr.P. art. 703(D).
Without any factual basis to support the conclusion that Mr. Roberts was in a car and a trailer belonging to a known drug buyer and a known drug seller, respectively, there is nothing in the record to indicate that the parties were, in fact, what they were said to be. There is nothing in the record to evidence that either party had been arrested, charged, or convicted in connection with any illegal drug activity. Similarly, there was nothing in the record, other than the conclusory statement that Mr. Roberts had been in a high crime area, to evidence that the area was, in fact, a high crime area. There was nothing in the record to reflect what crimes had been committed in the area or even that there had been any arrests in the area.
When Captain Wiltz was asked why he conducted a “pat down” of Mr. Roberts, Captain Wiltz stated that he did so “[f]or the reason that he was in and out |7of a high crime area.” He further said that “[h]e had given me a lie basically about where he had been and why he was there.” Although Captain Wiltz’s testimony reflected that he was concerned for his safety, being in a “high crime area” without more does not lead to a reasonable suspicion sufficient to justify an investigatory stop. Additionally, an unverified statement likewise does not lead to such reasonable suspicion.
It would have been helpful for the trial court to have heard the testimony of the *171 two agents who reported to Captain Wiltz and Deputy Solis that Mr. Roberts was seen in a high crime area and that he had been seen in the car and the trailer of a known drug buyer and a known drug seller, respectively. Additionally, it would have been helpful for the trial court judge to have heard testimony regarding the length of time Mr. Roberts was in the trailer so that the trial court judge could have determined whether the length of time was more consistent with a quick drug transaction rather than some legitimate purpose.
As stated in the Dank case, the reviewing court must look to the particular facts and circumstances in each case involving an investigatory stop. We find that in the instant case, there are no articulable facts in the record to support an investigatory stop of Mr. Roberts.
Because we have found that there was no reasonable suspicion for Captain Wiltz to conduct an investigatory stop, we must conclude that the seizure of the cocaine that was in one of Mr. Roberts’ pockets was unlawful. Therefore, we find that Mr. Roberts’ assignment of error has merit.
CONCLUSION
The trial court’s denial of Mr. Roberts’ motion to suppress the evidence against him is hereby reversed. We also reverse Mr. Roberts’ conviction and|ssentence, and we remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. In the Crosby case the Louisiana Supreme Court held that the court was not barred from reviewing the assignments of error that were specifically reserved at the time of a guilty plea, if the trial court accepted the guilty plea conditioned upon the defendant's right to appeal those assignments of error.