# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Harris*, 2011 IL App (1st) 103382

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DEREK HARRIS, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-3382 |
| Filed | September 2, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated unlawful use of a weapon, defendant's motion to suppress the weapon discovered on his person was properly granted, where the officer involved failed to provide specific and articulable facts that would justify the *Terry* stop and there was no constitutional basis for the protective search performed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-8569; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Veronica Calderon Malavia, Yvette Loizon, and Sebastian Soto, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Alan D. Goldberg, and Rachel Moran, all of State Appellate Defender's Office, of Chicago, for appellee.

Panel

PRESIDING JUSTICE EPSTEIN delivered the judgment of the court, with opinion.

Justices Fitzgerald Smith and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Derek Harris was arrested on April 23, 2010, and was charged with aggravated unlawful use of a weapon pursuant to sections 24-1.6(a)(1) and (a)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)). Defendant moved to quash the arrest and suppress the weapon recovered by the police at the time of the arrest. After initially denying defendant's motion, the trial court, on reconsideration, granted the motion to suppress the weapon. The State appeals that decision pursuant to Supreme Court Rules 604(a)(1) and 606. Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006); R. 606 (eff. Mar. 20, 2009). For the reasons stated below, we affirm.

¶ 2                    BACKGROUND

¶ 3    Defendant was arrested for aggravated unlawful use of a weapon on April 23, 2010. On June 18, 2010, defendant filed a motion to quash his arrest and suppress all evidentiary products of that arrest, including a handgun recovered by the police during a protective search. Defendant argued that his seizure and arrest were made in violation of the fourth amendment to the United States Constitution. U.S. Const. amend IV. At the August 11, 2010, suppression hearing, the following evidence was adduced through the testimony of Chicago police officer Daniel Goon, the only witness presented.

¶ 4    On April 23, 2010, Officer Goon and his partner, Officer Doolin, were patrolling in the vicinity of 9126 South Oglesby Avenue, Chicago, Illinois, an area the State characterized as "one of high burglaries and high robberies." They were in plain clothes and an unmarked vehicle. At approximately 9:30 p.m., Officer Goon observed defendant and another man walking in his direction. The men did not appear to be committing any crime, nor could the officers see that the men were armed. Officer Doolin began to drive toward the two men

-2-

who, according to Officer Goon, then looked in their direction and appeared to hide behind a car. The officers got out of their vehicle, announced their office, and approached the men for a field interview. Defendant and his companion then fled toward a nearby house, and Officers Goon and Doolin gave chase, eventually stopping the men on a porch. The officers performed a protective pat down search of the men, during which Officer Doolin felt an object on defendant that he believed to be a weapon. Defendant told Officer Doolin that the object was a gun. Officer Doolin then recovered a .22-caliber handgun from defendant and placed him and his companion under arrest.

¶ 5    After hearing this evidence, the trial court denied defendant's motion to quash and suppress. The court found that Officer Goon's testimony was credible and defendant's flight from the police was "[t]he compelling thing" justifying the brief investigatory stop, despite the fact that Goon "may not be able to articulate what was going on, except that Mr. Harris was trying very hard to get away from the police." On reconsideration, however, the trial court vacated its prior ruling and suppressed the weapon in light of *Illinois v. Wardlow*, 528 U.S. 119 (2000), finding that defendant's conduct was "neutral." The State appeals, contending that the stop and search of defendant were justified because he attempted to evade the police in a high crime area. Defendant responds that the stop was unjustified because the police lacked reasonable suspicion that a crime was being committed, and the search was unjustified because the police had no reason to believe defendant was armed and dangerous.

¶ 6                                   ANALYSIS

¶ 7    The standard of review for evaluating a trial court's decision on a motion to suppress evidence recovered during a warrantless "stop and frisk" is well established and uncontested.

> "Generally, a trial court's decision on a motion to suppress evidence is subject to reversal only if it is clearly or manifestly erroneous. [Citation.] This test is based on the understanding that suppression motions usually raise mixed questions of law and fact: a court first weighs the evidence and determines the facts surrounding the complained-of conduct, after which it decides whether, as a matter of law, these facts constitute unconstitutional seizure." *People v. Thomas*, 198 Ill. 2d 103, 108 (2001).

The trial court's application of law is reviewed *de novo*. *People v. F.J.*, 315 Ill. App. 3d 1053, 1056 (2000).

¶ 8    In this case, we are presented with two questions: (1) whether the investigatory stop of defendant was justified, and (2) whether the protective search of defendant was justified. These are distinct but related inquiries. "The fact that a police officer has reason to stop an individual does not necessarily mean that the additional intrusion of a search for weapons will also be warranted." *Id*. at 1055. We will address each issue in turn.

¶ 9                            I. The Investigatory Stop

¶ 10    The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "This provision applies to all seizures of the

person, including seizures that involve only a brief detention short of traditional arrest." *Thomas*, 198 Ill. 2d at 108. "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." *Id*. In the seminal case of *Terry v. Ohio*, however, the Supreme Court recognized a limited exception to the probable cause requirement, allowing police officers, under appropriate circumstances, to briefly stop a person for temporary questioning where the officer reasonably believes that the person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). The *Terry* standard has since been codified in the Illinois Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/100-1 *et seq*. (West 2008)), which states, in relevant part:

> "Temporary Questioning without Arrest. A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102-15 of this Code, and may demand the name and address of the person and an explanation of his actions." 725 ILCS 5/107-14 (West 2008).

We note that "[t]he same standard is applied in determining the propriety of an investigatory stop under article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6)." *Thomas*, 198 Ill. 2d at 109. The protection against unreasonable search and seizure under the Illinois Constitution is measured by the same standard used to define the protections contained in the fourth amendment to the United States Constitution. *Id*. (citing *People v. Tisler*, 103 Ill. 2d 226, 241-45 (1984)).

¶ 11    Under the *Terry* exception, the police may conduct a brief investigatory stop "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Wardlow*, 528 U.S. at 123. The police officer "must be able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant that intrusion." *Thomas*, 198 Ill. 2d at 109. Further, "[t]he conduct constituting the stop under *Terry* must have been justified at its inception." *Id*.

> "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. [Citation.] The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity. [Citation.]" *Wardlow*, 528 U.S. at 123-24.

The underlying facts are viewed "from the perspective of a reasonable officer at the time that the situation confronted him or her." *Thomas*, 198 Ill. 2d at 110. Courts must "be mindful that the decision to make an investigatory stop is a practical one based on the totality of the circumstances." *In re S.V.*, 326 Ill. App. 3d 678, 683 (2001).

¶ 12    The State argues that the police were justified in stopping defendant because he fled from them in a high crime area. A person's presence in a high crime area is a relevant factor in deciding whether, under the totality of the circumstances, the police have reasonable suspicion to justify a *Terry* stop. *Wardlow*, 528 U.S. at 124. Another relevant factor is a person's evasive behavior, particularly unprovoked flight from the police. *Id*. While neither

-4-

of these factors taken alone is sufficient to establish reasonable suspicion, when coupled, they can be enough to justify a *Terry* stop. *Id*. at 124-25. In *Wardlow*, for example, uniformed police officers participating in a special narcotics operation spotted the defendant holding an opaque bag in an area known for heavy narcotics trafficking. *Id*. at 121-22. The defendant fled when he saw the police, and when he was caught, the police conducted a protective search, finding a handgun in the bag. *Id*. In holding that these facts were sufficient to justify a *Terry* stop, the Supreme Court stated:

> "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. [Citation.] But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis. [Citation.]
>
> In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. [Citations.] Headlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id*. at 124-25.

As the concurrence in *Wardlow* was quick to emphasize, the Supreme Court refused to adopt the bright-line rule advocated by the State of Illinois authorizing the temporary detention of anyone who flees at the mere sight of the police. *Id*. at 126, 136 (Stevens, J., concurring in part and dissenting in part, joined by Souter, Ginsburg, and Breyer, JJ.).

¶ 13    The State argues that this case is similar to *Wardlow* and should thus be decided on the same basis. Defendant counters that *Wardlow* is distinguishable because Officer Goon had no information that illegal activity was occurring in the area, he was not investigating any particular crime, and the trial court did not find that the location where he stopped defendant was a high crime area. The State contests this last point, asserting that Officer Goon's unimpeached testimony established that it was a high crime area. We do not agree. Whether an area has a high level of crime is a factual issue. *People v. Davis*, 352 Ill. App. 3d 576, 580 (2004). The only contextual evidence introduced by the State at the suppression hearing was adduced through the following testimony:

> "MS. PETERSON [Assistant State's Attorney]: Officer Goon, in the area where this [stop] took place, how long have you patrolled that area?
>
> OFFICER GOON: You mean my District or that night?

MS. PETERSON: Specifically the area where you were and where you had the opportunity to approach the Defendant and his co-arrestee?

OFFICER GOON: That night we were in the area probably since the beginning of our shift.

MS. PETERSON: And that area is in fact known to be one of high burglaries and high robberies; is that correct?

OFFICER GOON: That's correct.

MR. LYKE [Defense Counsel]: Objection, Judge.

THE COURT: I am waiting for the first block in Chicago that's not considered in the high crime area, and I haven't heard about it yet."

The trial court did not make any express finding concerning the character of the area where defendant was stopped. However, the only reason given by the trial court for its initial finding that the police had reasonable suspicion to stop defendant was his flight from the police, which the court described as "[t]he compelling thing." In its ruling on defendant's motion to reconsider, the court stated:

"THE COURT: I have heard and considered and reconsidered issues raised in this motion. I again find the officer that testified to be credible. But the conduct is actually neutral in looking at *Wardlow* again and reading it.

I will respectfully allow the motion. I will reverse my ruling. Order of August 11th is vacated. The motion to suppress is sustained."

This indicates that the trial court, having reread *Wardlow*, concluded that the State failed to establish any relevant factor justifying the stop other than defendant's flight, which was itself insufficient to establish a reasonable suspicion that defendant had committed, was committing, or was about to commit a crime.

¶ 14     A conclusory and unsubstantiated statement that a location is a "high crime area" is insufficient to establish that consideration for purposes of justifying a *Terry* stop.

"The citing of an area as 'high-crime' requires careful examination by the court, because such a description, unless properly limited and factually based, can easily serve as a proxy for race and ethnicity. *** [C]ourts must carefully examine the testimony of police officers *** and make a fair and forthright evaluation of the evidence they offer, regardless of the consequences." *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000).

Although the parties have not referenced, and we cannot identify, any Illinois cases discussing the quantum of evidence necessary to establish that a location is a high crime area, the handful of cases from other jurisdictions addressing this issue have considered a number of factors relevant to that inquiry, including some combination of the following:

"(1) the nexus between the type of crime most prevalent or common in the area and the type of crime suspected in the instant case, *e.g.*, *Wardlow*, 528 U.S. at 124, 120 S. Ct. 673 (noting that the area was not simply generally crime-ridden, but was particularly 'known for heavy narcotics trafficking,' where the defendant was suspected of drug activity); *United States v. Edmonds*, 240 F.3d 55, 60 (D.C. Cir.

2001) (noting that the finding of a high crime area was supported by the similarity between the type of crime commonly found at that location and the type of crime for which the police suspected this defendant); (2) limited geographic boundaries of the 'area' or 'neighborhood' being evaluated, *e.g.*, *United States v. Caruthers*, 458 F.3d 459, 468 (6th Cir. 2006) (affirming a district court's finding of a high crime area, in part, because the evidence of frequent crime was specific to the exact intersection where the stop occurred); *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc) ('We must be particularly careful to ensure that a "high crime" area factor is not used with respect to entire neighborhoods or communities in which members of minority groups regularly go about their daily business, but is limited to specific, circumscribed locations where particular crimes occur with unusual regularity.'); and (3) temporal proximity between evidence of heightened criminal activity and the date of the stop or search at issue, *e.g.*, *United States v. Bailey*, 417 F.3d 873, 874-75, 877 (8th Cir. 2005) (affirming high crime area finding, in part, because of criminal activity during week prior to the stop at issue, occurring in same location as the stop). Evidence on these issues could include a mix of objective data and the testimony of police officers, describing their experiences in the area." *United States v. Wright*, 485 F.3d 45, 53-54 (1st Cir. 2007).

See also *D.R. v. State*, 941 So. 2d 536 (Fla. Dist. Ct. App. 2006) (police officer's vague and unsubstantiated statement that a neighborhood was a known high crime or narcotics area was insufficient to establish that it was a high crime area). While these decisions are not binding on this court, they may be considered as persuasive authority. *People v. Boeckmann*, 238 Ill. 2d 1, 12 (2010).

¶ 15    In this case, aside from Officer Goon's unsubstantiated response to the State's question of whether the area was "known to be one of high burglaries and high robberies," which the trial court rejected, no evidence was introduced, either by way of experience or objective knowledge, concerning the level of crime in the area where defendant was stopped. No evidence was introduced concerning the timing, frequency or location of the robberies and burglaries referenced by the State. No evidence was introduced that the police suspected defendant of committing any robberies or burglaries. Nor were the boundaries of the area at issue even generally defined. Further, the police were not responding to any report of a crime or engaging in an investigation of a crime that might alert them to the presence of criminal activity. In short, the State failed to establish the presence of any significant criminal activity in the area of the stop. That deficiency distinguishes this case from *Wardlow*. Given the dearth of contextual evidence, and the fact that the only other evidence possibly justifying the stop was defendant's evasive conduct, we do not find that the trial court's decision was clearly erroneous.

¶ 16                                    II. The Protective Search

¶ 17    Having concluded that the police were not justified in temporarily detaining defendant, we must also conclude that their subsequent search of defendant was not justified. A police officer making a reasonable investigatory stop may conduct a protective search if he has

reason to believe the suspect is armed and dangerous. *Adams v. Williams*, 407 U.S. 143, 146 (1972). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence***." *Id*. This standard is embodied in the Code, which allows a police officer who "has stopped a person for temporary questioning pursuant to Section 107-14" to perform a protective search when he "reasonably suspects that he or another is in danger of attack." 725 ILCS 5/108-1.01 (West 2008). However, the right to perform a protective search presupposes the right to make the stop. The police may only perform a protective search if they are entitled to stop the person in the first place. *Adams*, 407 U.S. at 146 (police officer may perform a protective search "[s]o long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous"); *Davis*, 352 Ill. App. 3d at 580 ("In order for a frisk to be constitutionally reasonable, (1) the stop must be proper, (2) the officer must have reason to know that the defendant is armed and dangerous, and (3) the scope of the search must be strictly limited to a search for weapons."). This court provided an instructive example of this principle in *People v. F.J.*, where it referenced with approval Professor LaFave's statement:

> " '[I]f a policeman sees a suspicious bulge which possibly could be a gun in the pocket of a pedestrian who is not engaged in any suspicious conduct, the officer may not approach him and conduct a frisk. And this is so even though the bulge would support a frisk had there been a prior lawful stop. Likewise, if an officer, lacking the quantum of suspicion required by *Terry* to make a forcible stop, instead conducts a non-seizure field interrogation, he may not frisk the person interrogated upon suspicion that he is armed; in such a case the officer may protect himself by not engaging in the confrontation.' " *People v. F.J.*, 315 Ill. App. 3d 1053, 1060 (2000) (quoting 4 Wayne R. LaFave, Search and Seizure § 9.5(a), at 247-48 (3d ed. 1996)).

Since Officer Goon did not provide specific and articulable facts justifying the *Terry* stop, the protective search performed during that stop also lacked a sound constitutional basis. Accordingly, the trial court's ruling granting defendant's motion to suppress is affirmed.

¶ 18                                 CONCLUSION

¶ 19      Based on the foregoing, we affirm the trial court's ruling of October 7, 2010, granting defendant's motion to suppress.


¶ 20      Affirmed.