ACCEPTED
01-15-00200-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/28/2015 5:26:38 PM
CHRISTOPHER PRINE
CLERK

# No. 01-15-00200-CR

FILED IN
~~1st COURT OF APPEALS~~
HOUSTON, TEXAS
5/28/2015 5:26:38 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE
FIRST COURT OF APPEALS
HOUSTON, TEXAS**

**KRISTINE MARIE MURRELL,**
Appellant

**VS.**

**THE STATE OF TEXAS,**
Appellee

_____

**ON APPEAL FROM THE COUNTY CRIMINAL COURT
NUMBER 14 OF HARRIS COUNTY, TEXAS
CAUSE NO. 1973306**

_____

**BRIEF FOR APPELLANT**

J. Dennis Hester
State Bar No. 24065415
COGDELL LAW FIRM, PLLC
402 Main, St., 4th Floor
Houston, Texas 77002
Office:        713-426-2244
Facsimile:     713-426-2255

**ORAL ARGUMENT REQUESTED**

# IDENTIFICATION OF PARTIES

Pursuant to TEX R. APP. P. 38.1(a), a complete list of the names and addresses of all interested parties is provided below so the members of this Honorable Court may determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Complainant or aggrieved party:**
The State of Texas

**Appellant or Defendant:**
Kristine Marie Murrell

**Trial Counsel for Appellant:**
Mark Alvan Metzger
1770 St. James Place, Suite 115
Houston, Texas 77056

**Appellate Counsel for Appellant**
J. Dennis Hester
402 Main Street, 4th Floor
Houston, Texas 77002

**Trial Counsel for the State:**
James Murphy
Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

**Trial Judge:**
The Honorable Judge Michael R. Fields
Harris County Criminal Court at Law Number 14
1201 Franklin Street, 7th Floor
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES…………………….…..…………....…….. ii

INDEX OF AUTHORITIES…………………….…..…………………….… v

STATEMENT OF THE CASE…………………….…..…………………… 1

ISSUES PRESENTED…………………….…..…………………………… 1

STATEMENT OF THE FACTS…………………….…..………………… 2

A.      The hearing on Murrell's motion to suppress…………………..………... 2

B.      The court's ruling denying the motion to suppress.………………………. 4

C.      The court's findings of fact and conclusions of law.………………................ 4

SUMMARY OF THE ARGUMENT…………………….…..………….. 6

ARGUMENT…………………….…..…………………………………... 7

A.      Issue one: The court's findings that Murrell was
changing speeds frequently, was driving below the
speed limit, and was in an area with "several" establishments
that serve alcohol are conclusory findings that deserve no weight….………….. 8

        1.      The court's finding that Murrell was driving 10 to
15 miles per hour below the speed limit and was
frequently changing speeds is a conclusory finding.………………. 8

        2.      The court's finding that Murrell was in an area with
a high concentration of bars and restaurants was a
conclusory finding.…………………………………………….. 10

B.      Issue Two: The court's findings that Murrell was "drifting",
that Simon was experienced in dealing with intoxicated persons,
and that Simon testified that the time of the stop was when people
would be leaving bars are unsupported by the record and
deserve no weight.…………………………..…………………………… 12

1.      The Court's finding that Simon observed Murrell "drift"
        is not supported by the record.…………….………………………………… 13

2.      The Court's finding that Simon had extensive experience
        with intoxicated persons is unsupported by the record……………….... 13

3.      The Court's finding that "Simon testified that the time
        of the stop, approximately 1:30 a.m., was significant as
        that is when people would often be leaving bars and
        restaurants after drinking" is unsupported by the record………………… 14

C.  Issue Three: The only evidence of intoxication was Murrell's
    lane changes while signaling, which is insufficient to
    establish reasonable suspicion.………………………………………….…... 15

1.      Frequent lane changes while signaling
        (even swerving) is insufficient.………...………………………………. 15

2.      Even if it were considered, Murrell's driving slowly and
        alternating speeds is insufficient to establish reasonable
        suspicion of intoxication under totality of the circumstances…………… 16

3.      Even if all factors are considered, the stop is not supported
        by reasonable suspicion………………………………………………….. 17

CONCLUSION AND PRAYER………………………………………………………….. 18

CERTIFICATE OF SERVICE………………………………………………………. 20

CERTIFICATE OF COMPLIANCE……………………….......................................... 20

# INDEX OF AUTHORITIES

**Cases**

*Bass v. State*, 64 S.W.3d 646 (Tex. App.—Texarkana, 2001)…………….…………. 15

*Castro v. State*, 227 S.W.3d 737 (Tex. Crim. App. 2007)………...………………….. 6, 8

*Commonwealth v. Johnson*, 908 N.E.2d 729 (Mass. 2009)………………….…………. 12

*D.R. v. State*, 941 So.2d 536 (Fla. 2d Ct. App. 2006)…………….……………….….. 12

*Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005)………………………….…... 8, 10

*Foster v. State*, 326 S.W.3d 609 (Tex. Crim. App. 2010)………..………………….. 11

*Garcia v. State*, 43 S.W.3d 527 (Tex. Crim. App. 2001)…………………………….... 7

*Hernandez v. State*, 983 S.W.2d 867 (Tex. App.—Austin 1998)……….…….……… 15

*Klare v. State*, 76 S.W.3d 68 (Tex. App.—Houston [14th Dist], 2002)………………. 10

*Miller v. State*, 393 S.W.3d 255 (Tex. Crim. App. 2012)……………………………. 6, 12

*People v. Harris*, 957 N.E.2d 930 (Ill App. 1st 2011)…………………………….. 11

*Peters v. Texas Dept. of Public Safety*,
    404 S.W.3d 1 (Tex. App.—Houston [1st Dist.], 2013)…….………………….… 16

*Richardson v. State*, 39 S.W.3d 634 (Tex. App.—Amarillo, 2000)…….……………. 16

*State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013)….…………………….... 7

*State v. Palmer*, No. 2-03-526-CR,
    2005 WL 555281 (Tex. App.—Fort Worth, Mar. 10, 2005)…….……………. 17

*State v. Roberts*, 947 So. 2d 167 (La. App. 4th Cir. 2006)…….………………….. 11

*United States v. Hill*, 752 F.3d 1029 (5th Cir. 2014)………………….……..…….. 11

*United States v. Montero–Camargo*, 208 F.3d 1122 (9th Cir. 2000)…….…………. 10

*United States v. Neufeld-Neufeld*, 338 F.3d 374 (5th Cir. 2003)…….………………. 14

*United States v. Wright*, 485 F.3d 45 (1st Cir. 2007)…………………………………… 10

*Waller v. State*, No. 05-09-00097-CR,
     2009 WL 4642850 (Tex. App.—Dallas, Dec. 9, 2009)………………...…… 17, 18

*White v. State*, No. 2-07-234-CR,
     2008 WL 1867139 (Tex. App.—Fort Worth, Apr. 24, 2008)…………………... 18

## Statutes

TEX. R. APP. PRO. 9.4………………………………………………………….. 20

TEX R. APP. P. 38.1……………………………………………………………… ii

## STATEMENT OF THE CASE

On July 17, 2014, Appellant Kristine Murrell was charged by information with misdemeanor driving while intoxicated. (CR 6.) On November 7, 2014, Murrell filed a motion to suppress evidence. (CR 19-34.) On January 29, 2015, the trial court denied the motion to suppress and Murrell pleaded guilty. (CR 42-43.) On the same day, she was sentenced to one-year confinement, probated for one year. (CR 48.)

The trial court certified Murrell's right to appeal denial of her motion to suppress. (CR 47.) On February 13, 2015, Murrell filed a notice of appeal. (CR 55-57.) On February 16, 2015, the court entered findings of fact and conclusions of law. (CR 59-61.)

## ISSUES PRESENTED

This case raises three issues, all regarding reasonable suspicion for the traffic stop:

1. **Articulable facts or conclusory statements.** Only articulable facts, not conclusory statements, can support reasonable suspicion. Here, the stop was justified based on driving at alternating speeds, below the speed limit, in an area with "several" bars. Nothing established how Murrell's speed was determined—be it radar or pacing. The bar area was given no boundaries or specifics. Was suspicion wrongly based on conclusory evidence?

2. **Unsupported fact findings.** A court's factual findings are given deference only if the record supports them. Here, the officer testified that Murrell was *not* weaving, did not fail to maintain a single lane, and that she changed lanes frequently but signaled each time. The trial court found that Murrell was drifting both "within" and "into the next lane"—facts that the officer never testified to. Does the record support that Murrell was "drifting"?

3. **Totality of the circumstances.** A traffic stop is justified only if the "totality of the circumstances" supports reasonable suspicion. Here, the officer stopped Murrell for suspicion of DWI, not a traffic offense. Omitting conclusory facts and facts unsupported by the record, an officer with 18-months experience observed Murrell engage in an unspecified amount of lane changes; signaling each time. Is this sufficient justification for a traffic stop?

1

## STATEMENT OF THE FACTS

On November 7, 2014, Murrell filed her motion to suppress evidence. (CR 19-34.) Among her arguments were that she was detained by law enforcement without reasonable suspicion. (CR 20.)

### A.    The hearing on Murrell's motion to suppress.

The hearing on Murrell's motion to suppress was held on January 29, 2015. (RR 1.) The sole issue was whether the stop of Murrell's vehicle was supported by reasonable suspicion.

Harris County Sheriff Deputy Junius Simon, who initiated the stop, was the hearing's only witness. He explained that, at the time of the stop, he had 18-months experience in patrol and DWI investigations. (RR 5, 15-16, 23-24.) Simon testified that, prior to joining the Harris County Sheriff's Office ("HCSO"), he spent 14-years employed with the U.S. Department of State as a lieutenant for the Bureau of Diplomat Security. (RR 5, 24.) No further details concerning the nature of his State Department employment or the reason for its termination were given. (*See generally*, RR 1-41.)

The hearing established that, at approximately 1:30 a.m., on July 17, 2014, Simon initiated a traffic stop of Ms. Murrell. The stop occurred near the intersection of Kuykendahl Road and Cypresswood Drive in northern Harris County. (RR 5-7.) Simon believed that Murrell's vehicle was traveling below the posted speed limit and was frequently changing speeds. (RR 6, 13.) According to Simon, Murrell never exceeded the speed limit. (RR 6.)

2

At first, Simon claimed that Murrell was travelling 10 to 15 miles an hour under the 40 mile-per-hour speed limit, and at varying speeds. (RR 6, 12-13.) On cross-examination, he admitted that his offense report established that Murrell never travelled more than 10 miles an hour under the speed limit. (RR 22-23.) He later testified that Murrell drove at approximately 30 miles per hour throughout the encounter. (RR 27.)

Simon never articulated how Murrell's speed was determined—be it by radar or otherwise. He explained that driving below the speed limit and changing speeds could be a sign of intoxication, or of car trouble. (RR 15.)

A second basis for the stop was that, after making a right-hand turn, Murrell made an unspecified number of lane changes, signaling each time. (RR 8.) Simon did not articulate how many lane changes Murrell made, but explained, "I would speculate it was much – it was more than three times." (RR 16.) Each time Murrell changed lanes, Simon moved behind her. (RR 18-19.) Simon claimed that, on prior occasions, he had seen intoxicated drivers signal just prior to changing lanes to "mask" a swerve to look like a deliberate lane change. (RR 8.) But Simon did not describe Murrell's lane changes as failing to maintain a single lane, as drifting, or as "weaving." (RR 21.) ("No, I didn't observe any weaving.")

Simon explained, over defense counsel's objection, that there are "several" bars and restaurants near the area where Murrell was stopped. (RR 9-10.) This "area" was never defined in terms of borders, boundaries, or otherwise. No specific bars or restaurants were named. No specific number or estimate of bars was provided. No one asked Simon when, if he knew, the bars and restaurants closed in the area, or if they were

3

still open at 1:30 a.m. He never testified that the area had heightened incidents of drunk driving arrests or accidents as compared to any other area of the Houston metropolitan area. Nor did Simon ever say he observed Murrell coming from any bar or restaurant—and he apparently did not. (*See* RR 9-10.)

Simon followed Murrell for approximately one and a half miles. (RR 20.) Based on these facts, Simon conducted a traffic stop "solely for the issue of driving while intoxicated and nothing else." (RR 11-12.) He did not stop Murrell for committing a traffic offense. (RR 13.) He did not have any concern for Murrell being in distress and did not justify the stop based on his community care taking function. (RR 10, 19-20.)

**B.      The court's ruling denying the motion to suppress.**

At the conclusion of the hearing, the court denied Murrell's motion to suppress. (RR 40.) The court took "judicial notice that [Simon] has seen a number of intoxicated persons" based on his experience with the Department of State. (RR 35.) The court found the officer, "truthful when he says that that area of Kuykendahl is heavily populated by bars that sell alcoholic beverages." (RR 35.) The court continued to give significant weight to this factor in justifying its denial of the motion to suppress. (RR 36-37.) The court denied the motion to suppress and ordered the State to draft findings of fact and conclusions of law. (RR 40.)

**C.      The court's findings of fact and conclusions of law.**

On February 16, 2015, the court adopted the State's proposed findings of fact and conclusions of law. (CR 59-61.) Among the findings of fact were:

8. Simon observed the defendant driving at variable and erratic speeds, generally dropping 10-15 miles per hour below the speed limit.

9. Simon observed defendant turn onto Cypresswood Drive and drift within her lane.

10. Simon observed the defendant change lanes frequently and signal each time just before drifting into the next lane.

11. Simon observed the defendant continue to make evasive lane changes when he pulled his vehicle behind hers.

12. Several establishments that sell alcoholic beverages are located near where the stop occurred.

13. Simon testified that the time of the stop, approximately 1:30 AM, was significant as that is when people would often be leaving bars and restaurants after drinking.

\*\*\*

16. The Court finds that Officer Simon is a credible witness with extensive experience in law enforcement, DWI investigation, and observing intoxication.

(CR 60.)

The court then made its conclusions of law, including:

1. Because the defendant repeatedly accelerated and decelerated, drove 10-15 mph below the speed limit, made evasive lane changes, given the location, time and circumstances, based on his training and experience, Simon had a reasonable suspicion that the defendant may be driving while intoxicated and the defendant was lawfully detained.

2. Based on the totality of the circumstances when the defendant repeatedly accelerated and decelerated, drove below the speed limit, evasively changed lanes, and drifted within the lane, in the early morning hours, where alcohol establishments were nearby, combined with his experience and training, Simon had reasonable suspicion that the defendant was driving while

5

intoxicated and was justified in conducting a traffic stop to further investigate that suspicion.

(CR 61.)

## SUMMARY OF THE ARGUMENT

Several of the trial court's justifications for reasonable suspicion were improperly based on Simon's conclusory statements, rather than articulated facts. *Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007). One such finding was the officer's subjective observation that Murrell was driving under the speed limit and was changing speeds. No testimony explained how Simon determined Murrell's speed—there is only a conclusory statement that she was driving too slowly.

Likewise, the trial court's finding that the "area" where Murrell was stopped contained a high number of "establishments" serving alcohol was purely conclusory. No evidence of a number of bars was provided, nothing defined the borders of the area, and Simon never testified that the undefined area had heightened incidents of drunk driving. Simon offered only a conclusory statement that the undefined area had "several" establishments that serve alcohol.

Other of the trial court's justifications for the traffic stop, such as that Murrell was drifting within and outside of her lane, are unsupported by the record and must be excluded from the reasonable suspicion calculus. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012). Review of the record shows Simon testified that Murrell changed lanes an unspecified amount of times while signaling. He did not say she was drifting. In fact, Simon testified that Murrell was not weaving.

6

The court's finding that Simon is "experienced" in observing intoxicated persons based on his 14-year career with the Department of State is also unsupported. Nothing showed that Simon gained any such experience as a Department of State employee.

When these improperly considered facts are excised from the "totality of the circumstances," the remaining basis for the stop is that an inexperienced officer observed Murrell make unknown number of lane changes, while signaling. This does not provide sufficient reasonable suspicion for a traffic stop. The trial court's ruling should be reversed.

**ARGUMENT**

**THE TRAFFIC STOP WAS NOT SUPPORTED BY REASONABLE SUSPICION.**

Again, the stop in this case was based on a belief that Murrell could have been driving while intoxicated—it was not based on observation of a traffic offense. (RR 13.) The stop, therefore, is justified if, under the totality of the circumstances, Simon had specific articulable facts combined with rational inferences that would lead a reasonable officer to suspect that Murrell was driving while intoxicated. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

The trial court's findings on mixed questions of law and fact that do not depend on the evaluation of credibility are reviewed *de novo*. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). Review of whether a specific set of facts amounts to reasonable suspicion is also *de novo*. *Id*.

**A.** **Issue one: The court's findings that Murrell was changing speeds frequently, was driving below the speed limit, and was in an area with "several" establishments that serve alcohol are conclusory findings that deserve no weight.**

A conclusory statement or finding that is unsupported by articulable facts cannot support reasonable suspicion. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). That is because, "[m]ere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis." *Id*. The following fact-findings are conclusory and do not support reasonable suspicion.

**1.** **The court's finding that Murrell was driving 10 to 15 miles per hour below the speed limit and was frequently changing speeds is a conclusory finding.**

In *Castro v. State*, the Court of Criminal Appeals again emphasized that reasonable suspicion generally cannot be based on conclusory statements. *Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007). *Castro* tailored a narrow exception to this rule and held that when an officer bases a decision to stop a vehicle on "objective" facts, such as failure to signal a lane change, conclusory statements may suffice. *Id*. But where an officer's "subjective determination," justifies the stop—such as an observation that a defendant is speeding—a conclusory statement is never sufficient. *Id*.

Simon's testimony concerning Murrell's speed is conclusory and wholly unsupported. Traveling too slowly and frequently changing speeds are, like driving too fast (an example from *Castro, supra*, at 742), subjective determinations that require more than a conclusory statement. Simon stated that Murrell was changing speeds and travelling below the speed limit, but he never explained *how* this was determined. (*See*

8

*e.g.* RR 14-15.) Was Murrell's speed clocked by radar? Was she paced? The record does not say. It provides only conclusory statements that she was driving slowly and changing speeds. Without more, both *Castro* and *Ford* say that Simon's conclusory statements regarding Murrell's speed are entitled to no weight in the reasonable suspicion analysis.

Simon's testimony concerning speed of travel was not only conclusory; it was inconsistent. First, Simon testified that she travelled 10 to 15 miles per hour under the speed limit and at alternating speeds. (RR 6.) Then, on cross-examination, he admitted that that his offense report established she was going 10 miles per hour below the 40 mile-per-hour speed limit, not 15. (RR 21-22.) Then, on re-direct, Simon, inconsistent with testimony that Murrell was frequently changing speeds, stated that she drove approximately 30 miles-per-hour throughout the encounter:

> Q. Now in your offense report you noted – defense counsel made a big deal about you said approximately 30 miles per hour.
>
> A. Correct.
>
> Q. So that would be an approximation of the speed through the entire encounter?
>
> A. Exactly.

(RR 27.) Had there been any testimony concerning *how* Murrell's speed was determined, the record would perhaps be clearer. But only conclusory statements are provided. These conclusions do not support reasonable suspicion.

9

**2. The court's finding that Murrell was in an area with a high concentration of bars and restaurants was a conclusory finding.**

The court found that "several establishments" in the area where Murrell was stopped sell alcohol. (CR 60.) This finding is also conclusory and deserves no weight. *Ford*, 158 S.W.3d at 493. No evidence or testimony indicated what number constitutes "several establishments." No evidence showed the amount of DWI arrests or accidents in this undefined "area," as compared with the rest of Harris County. Nothing defined the geographic borders of the area.

A finding that an area is populated with bars where people commonly drive impaired is akin to presence in a "high crime area," which is sometimes cited as a factor contributing to reasonable suspicion.[1] But for presence in a "high crime area" to be given any weight, the area must at least be defined.[2] In fact, courts require evidence of: (1) a nexus between the most prevalent crime in the area and the type of crime suspected in the case; (2) limited geographic boundaries; and (3) temporal proximity between evidence of heightened criminal activity and the date of the stop or search at issue. *United States v. Wright*, 485 F.3d 45, 53-54 (1st Cir. 2007) (citing cases from multiple courts, including the U.S. Supreme Court). No such evidence was presented here. Conclusory or vague

---

[1] Presence in a high crime area, like time of night, is a factor to consider but is never enough by itself to establish reasonable suspicion. *Klare v. State*, 76 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist], 2002, pet. ref'd)

[2] The concern with failing to specify borders for an area considered to be "high crime" or a "bar district" is obvious. If the area is not limited, an entire neighborhood or community could be painted as a zone where constitutional protections and liberty is significantly lessened. *See United States v. Montero–Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc) ("We must be particularly careful to ensure that a 'high crime' area factor is not used with respect to entire neighborhoods or communities . . . but is limited to specific, circumscribed locations where particular crimes occur with unusual regularity.")

statements do not suffice. *See United States v. Hill*, 752 F.3d 1029, 1038 (5th Cir. 2014)

(giving no credence to the government's "vague and generalized contentions about the

whole 'area' . . . being high crime.").[3]

Numerous jurisdictions have rejected presence in a particular area as a factor

supporting reasonable suspicion where, like here, only conclusory testimony is offered. In

*State v. Roberts*, a Louisiana court of appeal gave no significance to the officer's "high

crime area" testimony because:

> [T]here was nothing in the record, other than the conclusory statement
> that Mr. Roberts had been in a high crime area, to evidence that the
> area was, in fact, a high crime area. There was nothing in the record to
> reflect what crimes had been committed in the area or even that there
> had been any arrests in the area.

*State v. Roberts*, 947 So. 2d 167, 170 (La. App. 4th Cir. 2006). The same is true here.

This record is void of any facts supporting the conclusory statement that the area has

"several establishments" that serve alcohol or that there were heightened incidents of

drunk driving in the area.

In *People v. Harris*, an Illinois court of appeal gave no significance to officer

testimony that the defendant was in an area "known to be one of high burglaries and high

robberies." 957 N.E.2d 930, 937 (Ill App. 1st 2011). Again, no evidence was introduced

concerning crime in the area. *Id*. No evidence was introduced concerning the timing,

---

[3]     Murrell does not suggest that presence in an area with a high number of bars is not a
factor in the reasonable suspicion analysis. But it must be supported by some articulable facts or
common knowledge that the area was, for example, a "bar district." *See e.g. Foster v. State*, 326
S.W.3d 609, 611-12 (Tex. Crim. App. 2010) (officer testified that "it is common for many
people to be impaired in Austin's Sixth Street bar district late at night," which is where the stop
occurred). Nothing like that is present here.

frequency or location of robberies and burglaries. *Id*. Nor were the boundaries of the area defined. *Id*.

In *D.R. v. State*, a Florida court of appeal gave no weight to the testifying officer's vague and unsubstantiated statement that a neighborhood was a known as an area with heightened narcotics activity and found such testimony could not be considered in the reasonable suspicion analysis. 941 So.2d 536, 537-38 (Fla. 2d Ct. App. 2006).

As stated by the Supreme Judicial Court of Massachusetts:

> The term 'high crime area' is itself a general and conclusory term that should not be used to justify a stop or a frisk, or both, without requiring the articulation of specific facts demonstrating the reasonableness of the intrusion.

*Commonwealth v. Johnson*, 908 N.E.2d 729, 733 (Mass. 2009).

The record does not provide sufficient information that the area where Murrell was stopped contained several establishments that sell alcohol. The area should have been defined and limited. The officer should have testified to similar arrests in the area. A specific number of, or at least an estimate of, "establishments" should have been provided. None of that is presented here. This factor deserves no weight.

**B.      Issue Two: The court's findings that Murrell was "drifting", that Simon was experienced in dealing with intoxicated persons, and that Simon testified that the time of the stop was when people would be leaving bars are unsupported by the record and deserve no weight.**

While a trial court's fact findings that depend on witness credibility are given deference, that is *only if* they are supported by the record. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) ("deference is due only if the trial court's rulings are supported by the record"). Several of the court's findings are unsupported in the record.

1. **The Court's finding that Simon observed Murrell "drift" is not supported by the record.**

In finding of fact number 9, the trial court said: "Simon observed defendant turn onto Cypresswood Drive and drift within her lane." (CR 60.) In finding of fact number 10, the court stated that Simon observed Murrell "drifting" from one lane to another. (CR 60.) There is no such testimony in the record. The testimony was that, after Murrell turned on to Cypresswood, she changed lanes frequently, signaling each time. (RR 8, 18-19.) There was no testimony of "drifting." To the contrary, the deputy explained:

Q. She wasn't weaving, was she?

A. No, I didn't observe any weaving.

(RR 20-21.) The court's finding that Murrell drifted is not supported by the record and entitled to no weight. Simon never testified to this.

2. **The Court's finding that Simon had extensive experience with intoxicated persons is unsupported by the record.**

At the conclusion of the hearing, the trial court, "took judicial notice that [Simon] has seen a number of intoxicated persons" based on his experience with the Department of State and with the HCSO. (RR 35.) In the findings of fact and conclusions of law, the court found Simon has "extensive experience in law enforcement, DWI investigation, and observing intoxication." (CR 60.)

The record contains no evidence that Simon had any experience with DWI investigations as a Department of State employee. The Department of State does not make arrests for driving while intoxicated or other state-level intoxication offenses. The

13

court's taking of judicial notice that he is experienced in such investigations based on experience with the Department of State is unsustainable.

The court's finding that Simon is experienced, therefore, must have been based on his 18-months experience as a patrolman of the HCSO. To this point, Simon provided few vague details, that he had conducted "many" or "a lot" of DWI investigations. (RR at 11, 23.) His 18-months experience and lack of specificity concerning that experience is insufficient to lend support to the reasonable suspicion finding. In *United States v. Neufeld-Neufeld*, the Fifth Circuit found that an officer with 18-months experience was "inexperienced," though the reasonable suspicion calculus benefited from his partner's 13-years experience. 338 F.3d 374, 382 (5th Cir. 2003). Here, Simon did not have an experienced partner to offset his inexperience. His 18-months experience adds little, if anything, to the totality of the circumstances supporting reasonable suspicion.

3. **The Court's finding that "Simon testified that the time of the stop, approximately 1:30 a.m., was significant as that is when people would often be leaving bars and restaurants after drinking" is unsupported by the record.**

The court's findings of fact and conclusions of law say that Simon testified the timing of the stop, being 1:30 a.m., was significant because it is when people would be leaving bars. (CR 60.) No such testimony is in the record.

The time of a stop might be significant when an officer can articulate reasons why. But Simon, again, offered only conclusory testimony: "At 1:30, Your Honor, the thought in my mind was she was intoxicated." (RR 10.) No explanation was given as to *why* that time is significant. Simon never said that 1:30 a.m. was a time when people would be

14

leaving bars in the area after drinking. The record does not support such a finding from the trial court.

**C.**     **Issue Three: The only evidence of intoxication was Murrell's lane changes while signaling, which is insufficient to establish reasonable suspicion.**

When all improperly considered factors are excised, we are left with the following circumstances: (1) an inexperienced officer, (2) observed Murrell change lanes frequently while signaling. This is insufficient to support the traffic stop.

    **1.**     **Frequent lane changes while signaling (even swerving) is insufficient.**

Counsel has not located a single case in Texas law that holds frequent lane changes *while signaling* to be a sign of intoxication. Such behavior is so consistent with lawful and unimpaired driving that it is probable that no officer has sought to base a traffic stop for DWI on such a fact. Consequently, no court has found it necessary to address a citizen's lawful lane changes while signaling as a sign of intoxication. If this behavior alone were sufficient, then virtually every driver in the state would be pulled over at some point on suspicion of DWI.

Fortunately that is not the case. Not even so-called drifting, swerving, or weaving are sufficient in themselves to support a DWI traffic stop. *See Hernandez v. State*, 983 S.W.2d 867, 870 (Tex. App.—Austin 1998) ("drifting" across a lane marker did not establish reasonable suspicion of intoxication; there are a "myriad of reasons" why a person might drift); *Bass v. State*, 64 S.W.3d 646, 649-50 (Tex. App.—Texarkana, 2001) (no reasonable suspicion where officer followed defendant for "about three miles" and observed defendant "swerving within his lane").

Again, Murrell was not drifting or weaving. (RR 20-21.) She conducted completely lawful lane changes while signaling. This is insufficient to establish reasonable suspicion.

**2.  Even if it were considered, Murrell's driving slowly and alternating speeds is insufficient to establish reasonable suspicion of intoxication under totality of the circumstances.**

As stated above, this Court should not consider the trial court's finding that Murrell was driving below the speed limit at changing speeds because it is based on purely conclusive testimony. But even if all of the conduct were considered, it would not establish reasonable suspicion.

First, slow driving alone does not justify a traffic stop for suspicion of DWI. *See Peters v. Texas Dept. of Public Safety*, 404 S.W.3d 1, 4-5 (Tex. App.—Houston [1st Dist.], 2013) (driving 15 mph below speed limit late at night insufficient). As Simon himself testified, slow driving is not only a sign of intoxication, but also of car trouble. (RR 15.)

In *Richardson v. State*, an officer conducted a traffic stop at 2:00 a.m. because the defendant was travelling 20 miles-per-hour below the posted speed limit. 39 S.W.3d 634, 636 (Tex. App.—Amarillo, 2000). As here, the arresting officer testified that slow driving is consistent with mechanical problems with a vehicle. *Id*. at 640. The court ruled that driving 20 miles-per-hour below the speed limit at 2:00 a.m. is insufficient alone to justify an investigatory stop for driving while intoxicated. *Id*. It reversed the defendant's conviction.

16

**3.**      **Even if all factors are considered, the stop is not supported by reasonable suspicion.**

To go a step further, even if the Court were to consider Murrell driving at alternating speeds below the speed limit, in an area with bars, and changing lanes several times while signaling, there would still be no reasonable suspicion under the totality of the circumstances. This is demonstrated by review of three cases involving driving more suspicious than Murrell's and there was still an insufficient basis for the stop.

In *State v. Palmer*, the court found an officer lacked reasonable suspicion to stop the defendant for driving while intoxicated. No. 2-03-526-CR, 2005 WL 555281, at *2-3 (Tex. App.—Fort Worth, Mar. 10, 2005). The arresting officer observed the defendant: (1) in early morning hours, in proximity to local bars; (2) drive five miles per hour below the speed limit; (3) drive in an entrance ramp lane; (4) signal his intention to turn right when there was nowhere to turn; (5) apply his brakes in a sudden and unsafe manner when exiting the highway; (6) swerve over lane markers; (7) drive partially into the right-turn-only lane before rolling into the go-straight lane; and (8) hesitate before proceeding through a green light. *Id*. at *2. The trial court properly granted the defendant's motion to suppress and the appeals court upheld that decision. *Id*. at *3.

In *Waller v. State*, the court found facts insufficient for a traffic stop and reversed the appellant's conviction for driving while intoxicated. No. 05-09-00097-CR, 2009 WL 4642850, at *5 (Tex. App.—Dallas, Dec. 9, 2009). There, a concerned citizen called the police to report the appellant's possible drunken driving. *Id*. at *1, 5. When the arresting officer arrived at the scene, the appellant was driving 10 to 15 miles-per-hour under the

speed limit. *Id*. at *5. The appellant made an evasive maneuver that could have been an attempt to avoid the officer. *Id*. at *1, 5. Considering the totality of the circumstances—the anonymous tip, the evasive driving behavior, and driving significantly under the speed limit—the court, "conclude[d] the State failed to satisfy its burden of demonstrating reasonable suspicion and the trial court erred in denying Waller's motion [to suppress]." *Id*. at *5. His conviction was reversed.

*White v. State*, is also similar. No. 2-07-234-CR, 2008 WL 1867139, at *3 (Tex. App.—Fort Worth, Apr. 24, 2008). There, the appellant was observed a quarter mile from a bar, at 1:22 a.m., and traveling below the 45 mile-per-hour speed limit. *Id*. at *3. The officer, unlike here, testified the time was significant because it was when "a lot of bars start to close around the area." *Id*. The officer observed appellant's vehicle "drifting within his lane and [make a] sudden lane change from the right lane to the left lane and then, later, another lane change from the left lane to the right lane." *Id*. Like here, "Appellant signaled both lane changes." *Id*. Unlike here, the officer said the appellant was "drifting." The court found the officer had no reasonable suspicion for the stop and reversed the trial court's judgment denying the appellant's motion to suppress. *Id*. at *5. This Court should do the same—Murrell's driving was less suspicious than the defendants' in each of these three cases.

## CONCLUSION AND PRAYER

Most of the trial court's reasons for denying Murrell's motion to suppress were based on conclusory facts or facts unsupported by the record. When those facts are

18

excised from the reasonable suspicion analysis, the only basis for the stop is Murrell's lawful lane changes while signaling, which is insufficient.

However, even if all of the facts are considered, there was still not sufficient reasonable suspicion for the stop.

This Court should reverse the trial court's ruling denying Murrell's motion to suppress evidence, vacate the judgment of conviction, and remand this case to the trial court.

Respectfully submitted,

*/s/ Dennis Hester*
J. Dennis Hester
State Bar No. 24065415
COGDELL LAW FIRM, PLLC
402 Main St., 4th Floor
Houston, Texas 77002
(713) 426-2244
(713) 426-2255 (Fax)
dennis@cogdell-law.com

*Attorney for the Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2015, a true and correct copy of the foregoing Brief on the Merits was served upon the Appellate Division of the Harris County District Attorney's Office via facsimile at: (713) 755-5809.

*/s/ Dennis Hester*
J. Dennis Hester

**CERTIFICATE OF COMPLIANCE**

I certify, in accordance with TEX. R. APP. PRO. 9.4(i), that this Brief contains 4,716 words excluding caption, identity of parties and counsel, table of contents, index of authorities, statement of the case, statement of the issues presented, signatures, proof of service, and certificate of compliance.

*/s/ Dennis Hester*
J. Dennis Hester